## WILLIAM McMAHON *vs.* LEVI B. TYNG.

A defendant is not entitled, as a matter of right, to a ruling upon the question whether the plaintiff's evidence is sufficient to maintain an action, unless he will rest the defence on that evidence.

The record of the report of an examiner in the patent office, upon an application for the extension of a patent, is incompetent evidence against the patentee, to show that the patent was originally invalid, in an action brought by him on a promissory note given in consideration of an assignment of the patent.

If payment of a promissory note is resisted on the ground that it was given in consideration of an assignment of a patent, under false representations that a certain company had purchased the right to use it, and were to pay a certain sum therefor, and that its validity had been established in a court of law in Baltimore, the maker of the note cannot be allowed to put in evidence the declarations of the officers of that company to him, giving reasons for refusing to pay said sum to him, upon the order of the patentee; or to show that the plaintiff had since made inquiries and ascertained the untruth of the statement that the validity of the patent had been established in a court of law, especially if the defendant has not been disturbed in his enjoyment of the patent.

An expert cannot be allowed to testify that from investigations recently made by him in scientific works and otherwise he has ascertained that an invention, patented long before, was well known prior to the application for letters patent thereon.

CONTRACT upon two promissory notes, signed by the defendant, dated January 5th 1857, and payable in ten and twelve months respectively. The answer denied that there was any consideration for the notes, and averred that if there ever was any the same had failed, and also set up the statute of limitations. The writ was dated January 5th 1864.

At the trial in this court, before *Foster,* J., the plaintiff's counsel read the notes to the jury, and stated that in December 1849 the plaintiff, with another person, assigned to the defendant a patent right for an improvement in car-wheels, for which the defendant afterwards, in June 1850, gave to him a bond for $5000; and after some payments thereon said bond was given up, and another given in its place in June 1851; and the notes in suit were given for the last named bond. The plaintiff then rested, without any further evidence.

The defendant then asked the court to rule that one of the notes was barred by the statute of limitations; but the judge, having inquired if the defendant intended to rest his defence to

that note solely upon the statute of limitations, and being in-formed that he did not, directed him to proceed with the defence. Acknowledgments by the defendant, sufficient to take the note out of the statute, were subsequently proved.

The defendant contended that the notes were given for the extension of the patent right for seven years from and after April 10th 1857, which extension was in contemplation at the date of the notes; and that the bonds referred to were obtained under false and fraudulent representations by the plaintiff that the patent was a valid one. And there was evidence tending to show that when the defendant gave the bonds to the plaintiff, he did so relying on the plaintiff's representations that it was a valid patent, that it had been tested in a court of law in Baltimore, and that there was nothing in the way of its being made a productive property; that the South Carolina Railroad Company had purchased the right to use it, and were to pay $3000.00 therefor, which the defendant was to receive as a part of the consideration for which said bond was given; that after he took the assignment and gave said bond, he, the defendant, saw the officers of said railroad company, with a letter from McMahon to obtain said $3000.00, which said officers refused to pay. The defendant being a witness, his attorney proposed to ask him if said officers assigned any reason for not paying him, and, if so, what they were; but the judge refused to admit the testimony of their statements as to the reasons why they would not pay. The defendant's counsel then offered to prove that, at the time of said refusal, said officers declared that it was an old device, and denied that they had ever promised to pay anything for the use of the patent to the plaintiff; but the judge refused to admit the testimony.

The defendant, having been shown to be an expert, was asked by his counsel the following question:

" From investigations made by you as a machinist, in scientific works and otherwise, within three years past, have you ascertained whether or not this was a well known invention prior to the application for and issuing of the letters patent?" but the judge refused to admit the testimony.

The defendant introduced in evidence the letters patent, the assignment thereof to him, an attested copy from the records of the patent office of the plaintiff's application for the renewal and extension of said letters patent, and the decision of the commissioner of patents refusing the extension, and offered, as a part of the record proceedings on said petition, an attested copy of the record of the report of the examiner in said case, made to the commissioner, on which his decision was founded , but the judge rejected the testimony.    It was admitted by the plaintiff that the patent had never been extended, and that, if the notes were given for the extension thereof, he could not recover.

The defendant proposed to ask the plaintiff whether he had made inquiries and ascertained that the statement that the patent had been tested in a court of law, at Baltimore, was untrue ; but the judge refused to permit the question.

Upon the evidence, the judge instructed the jury that, if the consideration for the notes was the extension of the patent, they should find for the defendant; but if the consideration was for the bond, they should find for the plaintiff, unless they found that the bond was obtained of the defendant by fraud.

The jury returned a verdict for the plaintiff on both notes; and the defendant alleged exceptions.

*D. S. Richardson & R. B. Caverly*, for the defendant.

*W. P. Webster*, for the plaintiff.

WELLS, J.   The defendant was not entitled to a ruling upon the plaintiff's case, reserving to himself the right to put in his own case afterwards.   No exception lies to this refusal.

The other exceptions all relate to the exclusion of testimony. For a proper determination of these, it is necessary to have in view the precise position of the questions upon which the rejected testimony would bear.   The case was tried upon two aspects or theories in regard to the consideration for which the notes in suit were given.   The defendant's ground was that the notes were given for the extension of a certain patent right, which was proposed to be obtained for his benefit, but which failed.   To show the failure, he was allowed to put in, from the

records of the patent office, a copy of the decision of the com-
missioner, refusing the extension.  This was sufficient for his
purpose, in this particular; especially when it was admitted by
the plaintiff that the patent had never been extended.  Upon
this aspect of the case, the decision or opinion of the examiner,
which the defendant offered to put in, as a part of the same
proceedings, but which the court excluded, was entirely imma-
terial.

But it having been conceded by the plaintiff that if the notes
were given for the extension of the patent, he could not recover,
and the court having so instructed the jury, the verdict must be
taken as establishing the plaintiff's position that the notes were
based, for their consideration, upon the bond of 1851, and not
upon the proposed extension of the patent in 1857.  And there
are no exceptions to the evidence nor to the instructions which
bear upon the finding of the jury in this respect.

The only question at issue, therefore, to which the exceptions
can apply, is that raised by the claim of the defendant that the
bond was itself void by reason of the false and fraudulent repre-
sentations of the plaintiff, that the patent was a valid patent,
&c.

The report of the examiner and the decision of the commis-
sioner of patents have no legal retroactive operation.   Their
purpose and effect are to determine the question of an extension
of the patent; and they can have no further operation.   Al-
though the invalidity of the original patent for want of novelty
may be assigned as a reason for refusing an extension, yet such
an adjudication does not invalidate the patent, nor vacate the
original adjudication upon which it was at first issued.

Neither is it such an adjudication of the same question be-
tween the same parties as to make it competent evidence, in a
trial at law, involving the validity of the original patent.   The
issue before the commissioner is not upon the validity of the
patent, but upon the claims of the patentee for a further reward
by means of an extension.   The report of the examiner against
the claim of novelty of the device, although pertinent to the
question does not make his conclusion, that the original patent

was invalid, an adjudication to that effect. His conclusion is in its nature subordinate and incidental, rather than of the substance of the adjudication which is made by the commissioner. The decision of the commissioner may be made contrary to its result, and is not necessarily based upon it when in accordance with it. The validity or invalidity of the patent, therefore, was not necessarily involved in the adjudication refusing its extension. For the purposes for which that adjudication was made, it is undoubtedly evidence, if not conclusive. But we are of opinion that neither the report of the examiner nor the decision of the commissioner, upon the question of an extension of the patent in 1857, is competent evidence to establish the invalidity of the original patent in 1849, when the assignment was made upon which the bond of 1851 was based. •

The report of the examiner was therefore properly excluded. The admission of the decision of the commissioner, for another purpose, gave the defendant no right to insist that this report should also go in, as a part of the record, to be used for a purpose for which neither would be competent.

It was clearly incompetent for the defendant to show that the South Carolina claim was fictitious, by declarations of the parties there, when refusing to pay. If an assertion of defences could establish the invalidity of a demand, debtors might all go free.

The question proposed to the defendant, as an expert, sought to establish an historical fact, under the guise of a scientific opinion. It was properly excluded.

The question proposed to the plaintiff, whether he had made inquiries and ascertained that the statement, that the patent had been tested in a court of law, at Baltimore, was untrue, seems to be entirely immaterial. It would, at most, only show that, since making the representation, he had come to the knowledge of its incorrectness; which would tend to disprove the defendant's own claim that the representations were false and fraudulent when made. ·

But further than this; it does not appear that the question whether it had been tested in a court of law at Baltimore was

of any importance. So far as is shown, the defendant, by his assignment from the plaintiff, did in fact enjoy the advantages of the patent, duly issued and apparently valid, during the whole remaining period of its term, without infringement or interference. There is nothing in the evidence reported, even including that which was rejected, which tends to show that the plaintiff was guilty of fraud in the sale and assignment of the patent right; or which ought to discharge the defendant from payment of notes given, as the jury have found, for his debt arising from that assignment, and in settlement of a balance due on his bond, which could be impeached only on the ground of fraud. *Exceptions overruled.*